UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| THE CINCINNATI INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 2:11-CV-234-JD |
| | ) |
| MAINTENANCE DYNAMICS, INC.; | ) |
| JEFFREY CLEARY; and PATRICIA AMSDEN, | ) |
| individually and as administrator of the estate of | ) |
| PHILLIP AMSDEN, | ) |
| | ) |
| Defendants. | ) |

## OPINION & ORDER

This is a declaratory judgment action, brought in this court pursuant to its diversity jurisdiction. Plaintiff The Cincinnati Insurance Company ("CIC") sued all parties to a state-court motor vehicle accident lawsuit in an attempt to avoid any duty to indemnify or defend Maintenance Dynamics, Inc. ("MDI") or its employee, Jeffrey Cleary. On April 13, 2012, Cincinnati filed a motion for judgment on the pleadings. [DE 20]. None of the defendants ever filed a response, and for the reasons stated herein, the motion is granted.

## BACKGROUND

On May 6, 2011, the Estate of Phillip Amsden ("the Estate") brought a wrongful death action ("the Lawsuit") in the Circuit Court of Lake County, Indiana, against Defendants Maintenance Dynamics, Inc. ("MDI") and Jeffrey Cleary ("Cleary"). The Lawsuit remains pending under Cause No. 45D04-1105-CT-00111. In it, the Estate alleges that Cleary, while acting as an agent of MDI, caused a motor vehicle collision that led to the death of Phillip Amsden. [DE 1 at 2-3]. At the time of the collision, Cleary was driving a 2006 Land Rover that was owned, operated, and maintained

1

by MDI. [DE 1 at 3].

CIC is the issuer of two commercial insurance policies providing Business Auto Liability Coverage and Excess Liability Coverage to MDI and Industrial Rents, Inc. [DE 1 at 2]. The policies, labeled Policy No. EBA 003 26 47 and Policy No. EBB 003 26 47, respectively, were effective from July 24, 2010 to July 24, 2011. [DE 1 at 2]. MDI, Cleary, and the Estate all admit that the 2006 Land Rover involved in the accident was owned and titled in the name of Maintenance Dynamics, Inc. [DE 8 at 10; DE 14 at 5-6].

MDI and Cleary allege, based solely upon MDI's ownership of the 2006 Land Rover in question, that the vehicle was insured under Policy No. EBA 003 26 47 or Policy No. EBB 003 26 47. [DE 8 at 10]. Thus, MDI and Cleary have demanded that CIC provide them defense and/or indemnity for the claims alleged against them by the Estate based upon the coverage provided by the insurance policies. [DE 1 at 3]. While CIC is currently providing a defense to MDI for the Lawsuit under full reservation of rights, and another insurance carrier is defending Cleary, CIC maintains that it does not owe defense and/or indemnity to either MDI or Cleary under the Policy. This is so because the 2006 Land Rover is not a "covered auto," as would be necessary for coverage under either the Auto Liability Coverage policy or the Excess Liability Coverage policy. [DE 1 at 4-5]. On June 30, 2011, CIC filed this action seeking a declaratory judgment of no coverage, pursuant to IND. CODE 34-14-1 *et seq.* and 28 U.S.C. § 2201, and naming MDI, Cleary, and the Estate as defendants.

**Relevant Policy Provisions**

A.    **The Business Auto Liability Coverage Policy (Policy No. EBA 003 26 47)**

Section II(A) of the Business Auto Coverage Form contained in Policy No. EBA 003 26 47

issued to MDI and Industrial Rents, Inc. provides, in relevant part, as follows:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance, or use of a **covered "auto**."

[DE 21-1 at 2](emphasis added).

The Business Auto Coverage Part Declarations form describes the schedule of coverages and covered autos under this particular policy. [DE 21-2]. The schedule shows that the "covered autos" under this policy are those autos represented by Covered Auto Designation Symbols 7, 8, and 9. [DE 21-2 at 1]. According to Section I of the Business Auto Coverage Form, the Covered Auto Designation Symbol "7" represents "SPECIFICALLY DESCRIBED 'AUTOS'", which is defined as:

> Only those "autos" described in ITEM THREE of the Declarations for which premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to a power unit described in ITEM THREE).

[DE 21-1 at 1]. The Covered Auto Designation Symbol "8" represents "HIRED 'AUTOS' ONLY", which is defined as:

> Only those "autos" you lease, hire, rent, or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees" or partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

[DE 21-1 at 1]. Finally, the Covered Auto Designation Symbol "9" represents "NONOWNED 'AUTOS' ONLY", which is defined as:

> Only those "autos" you do not own, lease, hire, rent, or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal

3

affairs.

[DE 21-1 at 1]. Therefore, "covered autos" under the Business Auto Liability Coverage policy are limited to: (1) autos specifically listed in ITEM THREE of the Declarations; (2) HIRED AUTOS; and (3) NONOWNED AUTOS.

**B.      The Excess Liability Coverage Policy (Policy No. EBB 003 26 47)**

Section I (A)(1) of the Excess Liability Coverage Form, contained in Policy No. EBB 003 26 47 and issued to MDI and Industrial Rents, Inc., provides as follows:

> We will pay those sums the "insured" is legally obligated to pay as damages for that part of "loss" to which this insurance applies **in excess of "underlying insurance**."

[DE 21-3 at 2] (emphasis added). Additionally, Section I (A)(5) states:

> The terms, definitions, conditions, **limitations, and exclusions of the "underlying insurance"** are made a part of this Coverage Part...

[DE 21-3 at 2](emphasis added). Finally, Section I (B)(6) provides:

> This insurance **does not apply to...any liability not covered by "underlying insurance"** for any reason other than the exhaustion of an aggregate limit of insurance by payment of claims.

[DE 21-3 at 5](emphasis added). The net result is that the Excess Liability Coverage Policy does not somehow cover uncovered liabilities; it simply extends the coverage available with respect to covered liabilities.

## DISCUSSION

Pursuant to Rule 12(c), a party may move for judgment on the pleadings after the parties have filed the complaint and answer. *Brunt v. Service Employees Int'l Union*, 284 F.3d 715, 718 (7th Cir. 2002). The standard of review applicable to a Rule 12(c) motion is functionally equivalent to the standard applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Buchanan-*

*Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Thus, a Court should grant a Rule 12(c) motion when it appears beyond a doubt that the nonmoving party "cannot prove any facts to support a claim for relief" and the moving party "demonstrates that there are no material issues of fact to be resolved[.]" *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007). In the present case, the Plaintiff is the movant, so the question may be better phrased as whether there is any way the nonmoving party can possibly *defend* against the showing contained in the Plaintiff's pleadings and related documents. When considering a Rule 12(c) motion, the Court views the facts in the light most favorable to the nonmoving party. *Buchanan-Moore*, 570 F.3d at 827.

**A.     The Court's Authority under the Declaratory Judgment Act**

CIC brings this action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and the Indiana Uniform Declaratory Judgment Act, IND. CODE § 34-14-1, *et seq*. [DE 1 at 2]. Under the *Erie* doctrine, when a case is in federal court on diversity jurisdiction, the Court applies federal procedural law and state substantive law. *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 345 (7th Cir. 2010). The Federal Declaratory Judgment Act is a procedural statute that creates no substantive rights. *Medical Assur. Co. v. Hellman*, 610 F.3d 371, 377 (7th Cir. 2010). Further, the Indiana Uniform Declaratory Judgment Act, by its own terms, is to be "interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it, and to harmonize, as far as possible, with federal laws and regulations on the subject of declaratory judgments and decrees." IND. CODE. § 34-14-1-15. Therefore, the federal, rather than state, Declaratory Judgment Act controls this litigation, despite the fact that CIC brought this action pursuant to both. *Inst. for Studies Abroad, v. Int'l Studies Abroad, Inc.*, 263 F.Supp.2d 1154, 1156-57 (S.D. Ind. 2001). Moreover, "the question of whether a dispute has reached the state at which a declaratory judgment under 28 U.S.C. § 2201 is appropriate is a question of federal

5

practice." *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003).

The Federal Declaratory Judgment Act provides, in relevant part, that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."28 U.S.C. § 2201(a). By its own terms, § 2201 provides the Court "wide discretion in deciding whether or not to exercise this authority." *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 692 (7th Cir. 1995). While the existence of parallel proceedings in state court is one factor the Court should consider in deciding whether to exercise its authority under the Declaratory Judgment Act, it is not the only factor. *Medical Assur. Co.*, 610 F.3d at 379. Among other factors, the Court should consider:

> whether the declaratory suit presents a question distinct from the issues raised in the state court proceeding, whether the parties to the two actions are identical, whether going forward with the declaratory action will serve a useful purpose in clarifying the legal obligations and relationships among the parties or will merely amount to duplicative and piecemeal ligation, and whether comparable relief is available to the plaintiff seeking a declaratory judgment in another forum or at another time.

*Id.* The Court is also mindful that the goal of § 2201 is "to allow for the efficient resolution of disputes by an early adjudication of the rights of the parties." *Hellman*, 610 F.3d at 377.

Here, the Court is asked to declare the rights and legal obligations arising out of a contract of insurance between CIC and MDI. [DE 1 at 2]. Specifically, CIC seeks a declaratory judgment stating that CIC has no duty to defend and/or indemnify MDI or Cleary for the claims asserted against them in the underlying Lawsuit. [DE 1 at 5]. The Court finds that this request is procedurally proper in part, and procedurally improper in part, before moving to the substance of the issues.

### 1. **Procedural Propriety of CIC's Request for Declaratory Judgment Regarding Duty to Defend**.

Generally, the question of an insurance company's duty to defend presents an actual

6

controversy for which declaratory relief is proper. *Argento v. Melrose Park*, 838 F.2d 1483, 1492 (7th Cir. 1988). In this case, CIC's duty to defend MDI or Cleary is not being litigated in the underlying state court proceeding, so it presents a distinct issue in this action from the issues raised in the state court action. Further, determining whether an insurer has a duty to defend in an underlying state court action is a question of contractual interpretation "that does not require the resolution of any facts or issues in that underlying action. *Westfield Ins. Co. V. Sheehan Constr. Co.*, 575 F.Supp.2d 956, 959 (S.D. Ind. 2006). In Indiana, it is well settled that an insurer's duty to defend is determined by the allegations of the complaint coupled with those facts known to or ascertained by the insurer after a reasonable investigation. *Newnam Mfg., Inc.v. Transcon. Ins. Co.*, 871 N.E.2d 396, 405 (Ind. App. 2007). If the pleadings reveal that the claim is clearly excluded under the policy, then no defense is owed. *Walton v. First American Title Ins. Co.*, 844 N.E.2d 143, 147 (Ind. App. 2006). In light of the foregoing, the Court finds that the dispute over duty-to-defend is ripe, and that resolving it through a declaratory judgment is an appropriate exercise of the Court's authority.

    **2.    Procedural Propriety of CIC's Request for Declaratory Judgment Regarding Duty to Indemnify**.

In the Seventh Circuit, an insurance company ordinarily cannot obtain declaratory judgment regarding its duty to indemnify before its insured is found liable. *Lear Corp.*, 353 F.3d at 583. Indeed, "the duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit." *Zavalis*, 52 F.3d at 693. When a party seeks a declaratory judgment on an unripe duty-to-indemnify claim, it is proper for the Court "to dismiss that aspect of the case[.]" *Hellman*, 610 F.3d at 375. Therefore, the Court finds that any declaratory judgment concerning CIC's duty to indemnify MDI or Cleary issued prior to the establishment of liability would be an

7

improper exercise of its authority, and would amount to an adjudication of a dispute that is not ripe.

**B.     CIC's Duty to Defend MDI and Cleary**

The Court now moves to the substance of the duty-to-defend issue. In Indiana, "insurance policies are governed by the same rules of construction as other contracts." *Briles v. Wausau Ins. Co.*, 858 N.E.2d 208, 213 (Ind. App. 2006). The interpretation of an insurance policy is a question of law. *Id.* When interpreting an insurance policy, the Court's goal is to ascertain and enforce the parties' intent as manifested in the insurance contract. *Id.* An unambiguous insurance policy must be enforced according to its terms, even those that limit an insurer's liability. *Allstate Ins. Co. v. Hammond*, 759 N.E.2d 1162, 1168 (Ind. App. 2001). An insurance contract is ambiguous "only if reasonable people upon reading the contract would differ as to the meaning of the terms." *Id.* Ambiguity "is not established by the mere existence of a controversy or by the parties' differing interpretation of the contract terms." *Id.* An insurer's duty to defend is determined by the allegations of the complaint coupled with those facts known to or ascertained by the insurer after a reasonable investigation. *Newnam Mfg., Inc.*, 871 N.E.2d at 405. If the pleadings reveal that the claim is clearly excluded under the policy, then no defense is owed. *Walton*, 844 N.E.2d at 147.

In this case, all parties agree that the vehicle in question, a 2006 Land Rover, was owned by and titled in the name of Maintenance Dynamics, Inc. [DE 8 at 10, DE 14 at 5-6; DE 21-1 at 6]. The question is whether MDI's ownership of the 2006 Land Rover qualifies the vehicle for liability coverage under Policy No. EBA 003 26 47 or Policy No. EBB 003 26 47.

**1.     CIC Has No Duty to Defend Under the Business Auto Liability Coverage Policy (Policy No. EBA 003 26 47).**

The Business Auto Coverage Part Declarations form [DE 21-2] describes the schedule of coverages available under the Business Auto Liability Coverage Policy between CIC and MDI, as

8

well as clarifying the meaning of "covered autos." The schedule explains that the only "covered autos" are those autos represented by Covered Auto Designation Symbols 7, 8, and 9. [DE 21-2 at 1]. As explained above in greater detail, those designations cover: (1) autos specifically listed in ITEM THREE of the Declarations; (2) HIRED AUTOS; and (3) NONOWNED AUTOS.

The vehicle in question, a 2006 Land Rover, does not fall into any of those categories. First, the vehicle is not specifically listed in ITEM THREE of the Declarations, which was initially attached by CIC to its Complaint as Exhibit A and subsequently attached to its Memorandum Supporting the Motion for Judgment on the Pleadings as Exhibit D. [DE 1-4 through 1-11; DE 21-4]. Second, the vehicle is not a HIRED AUTO, as that category only includes "[o]nly those "autos" you lease, hire, rent, or borrow" [DE 21-1 at 1], and all parties agree that MDI owns the 2006 Land Rover outright. Finally, the vehicle is not a NONOWNED AUTO, which is limited to "[o]nly those "autos" you do not own, lease, hire, rent, or borrow that are used in connection with your business." [DE 21-1 at 1]. Thus, the vehicle in question is not a "covered auto" for the purposes of establishing CIC's duty to defend. None of the material terms are ambiguous, and the meaning of the language is plain. *Allstate Ins. Co.*, 759 N.E.2d at 1168. Since the pleadings reveal that the claim is clearly excluded under the Business Auto Liability Coverage Policy between CIC and MDI, no defense is owed by CIC. *Walton*, 844 N.E.2d at 147.

    **2.**    **CIC Has No Duty to Defend Under the Excess Liability Coverage Policy (Policy No. EBB 003 26 47)**.

According to Section I (A)(5) of the Excess Liability Coverage Form, the "limitations and exclusions" of the "underlying insurance" are incorporated into the Excess Liability Coverage Policy [DE 21-3 at 2]. Section I(B)(6) further clarifies that the Excess Liability Coverage Policy "does not apply to any liability not covered by the 'underlying insurance' for any reason other than the

9

exhaustion of an aggregate limit of insurance by payment of claims." [DE 21-3 at 5]. Thus, the Excess Liability Coverage Policy is subject to the same limitations and exclusions as the Business Auto Liability Policy, the underlying insurance. Additionally, the Excess Liability Coverage Policy does not cover any additional types of liability that the Business Auto Liability Policy does not cover. In short, the Excess Liability Coverage Policy only extends the coverage of the Business Auto Liability Policy, it does not cover new liabilities excluded by the underlying policy.

According to the plain meaning of the policy, the vehicle in question, a 2006 Land Rover owned by and titled in the name of Maintenance Dynamics, Inc., does not fall under any provision of the Excess Liability Coverage Policy. Section I(A)(5) and Section I(B)(6) make clear that the Excess Liability Coverage Policy only covers the types of liabilities covered under the Business Auto Coverage Policy. Since the Court has already determined that the vehicle in question is not a "covered auto" under the Business Auto Liability Policy, it likewise concludes that it is not a "covered auto" under the Excess Liability Coverage Policy. Again, none of the material terms are ambiguous, and the meaning of the language is plain. *Allstate Ins. Co.*, 759 N.E.2d at 1168. Since the pleadings reveal that the claim is clearly excluded under the Excess Liability Coverage Policy between CIC and MDI, no defense is owed by CIC. *Walton*, 844 N.E.2d at 147.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Defendants' Motion for Judgment on the Pleadings [DE 20] in part, and **DENIES** it in part. The motion is granted to the extent that the Court finds that CIC has no duty to defend MDI or Jeffrey Cleary in the underlying Lawsuit. It is denied, however, to the extent that CIC seeks a declaratory judgment regarding indemnification, a dispute which is not yet ripe, since the underlying Lawsuit is ongoing. The Clerk is therefore instructed to **ENTER JUDGMENT** in CIC's favor with respect to its request that the court find no duty to

10

defend, but to **DISMISS** the remainder of the suit **WITHOUT PREJUDICE**. CIC may reapply for a declaratory judgment regarding any duty to indemnify if or when MDI is found liable in the underlying Lawsuit.

    SO ORDERED.

    ENTERED:  January 28, 2013

                                                /s/ JON E. DEGUILIO
                                      Judge
                                      United States District Court